# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>MARISSA RALEEN MORGAN,<br><br>Defendant. | CASE NO. 23-2973<br><br>STATEMENT OF THE CASE |

Defendant-Appellant, Marissa Raleen Morgan, respectfully submits her Statement under Fed. R. App. P. 9 and 18 U.S.C. § 3145(c) seeking reversal of the district court's detention order.

## COURSE OF PROCEEDINGS

The United States charged Ms. Morgan with five counts of False Statement During Purchase of a Firearm in violation of 18 U.S.C. § 924(a)(2), five counts of False Statement During a Firearm in violation of 18 U.S.C. § 924(a)(1)(A), three counts of Straw Purchasing of a Firearm in violation of 18 U.S.C. § 932(B)(1), and one count of Unlawful User in Possession of a Firearm in violation of 18 U.S.C. § 924(a)(2) on February 15, 2023. (R. Doc. 1). Ms. Morgan was released on bond with conditions on February 21, 2023. (R. Doc. 18).

On April 20, 2023, Ms. Morgan voluntarily notified her Probation Officer that she had consumed CBD the day prior. (R. Doc. 25). The Probation Officer

1

recommended that Ms. Morgan remain out on bond with conditions. (R. Doc. 25). On April 25, 2023, Ms. Morgan admitted to her Probation Officer that she had consumed alcohol in the form of one margarita. (R. Doc. 34). Again, the Probation Officer recommended that Ms. Morgan remain out on bond with conditions and advised her of the conditions of her release. (R. Doc. 34). On May 16, 2023, Ms. Morgan was issued a citation for speeding and failed to report that citation to the Probation Office. (R. Doc. 34). On April 26, 2023, Ms. Morgan pled guilty to five counts of the fourteen she was charged with. (R. Doc. 27, 29). Then, on July 20, 2023, during the execution of an arrest warrant for Dominic Lacava, Ms. Morgan was noted to be in contact with him, in violation of her conditions for pretrial release. (R. Doc. 39).

Because of this contact, on July 20, 2023, the government filed a motion to revoke pretrial release and petition for Warrant. (R. Doc. 39). The Court held a detention hearing on July 31, 2023. (R. Doc. 47, 52). After hearing, the magistrate judge ordered that Ms. Morgan be detained. (R. Doc. 53). The Defendant appealed this order on August 10, 2023. (R. Doc. 59). The government filed a resistance on August 24, 2023. (R. Doc. 63) The District Court denied Defendant's appeal on August 28, 2023. (R. Doc. 67). Ms. Morgan timely appeals. (R. Doc. 68).

## FACTS

Ms. Morgan is 28 years old. (R. Doc. 36, page 2). She was born in Des Moines and is a lifelong resident of Iowa. She is the mother of three young children, whom

<mark>2</mark>

she shares custody with her ex-husband. (R. Doc. 65, 29:10–22). Ms. Morgan's sister, Madison Smith, also resides near Des Moines. (R. Doc. 65, 22:16–22). Ms. Smith supports her sister, and even testified at the hearing on her behalf. (R. Doc. 65, 22–29:9–22). Ms. Morgan had a part-time job in Des Moines and had begun receiving mental health treatment while on pretrial release. (R. Doc. 51, 59). Ms. Morgan has not missed a single court date, an appointment with counsel, or any appointment with her probation officer. (R. Doc. 51, page 3).

Ms. Morgan survived a difficult childhood that was defined by food insecurity, abuse, and neglect. (R. Doc. 51, 52, 26:16–24). At approximately age five, Ms. Morgan was sexually abused by a male cousin. (R. Doc. 51, page 3). Then, at age fourteen, Ms. Morgan was sexually exploited by her then-stepfather. (R. Doc. 51, page 3). Unfortunately, Ms. Morgan did not seek or receive any treatment for these incredibly traumatic events. (R. Doc. 52, page 3). Like many childhood domestic abuse victims, Ms. Morgan has endured further domestic abuse as an adult. (R. Doc. 52, 23–27:4–9). From March of 2022 through July 20, 2023, Ms. Morgan was trapped in a relationship with Dominic Lacava. (R. Doc. 52, 23:7–20). Lacava exerted an enormous amount of control over Ms. Morgan's life and dictated who she could talk to, when she could talk to them, and what she could say. (R. Doc. 52, 23–24:18–18). Lacava also routinely beat Ms. Morgan. (R. Doc. 52, 24–25: 11–23).

When law enforcement executed the warrant for Lacava's arrest on July 20, 2023, he was found at Ms. Morgan's residence. (R. Doc.52, 7:1–19). Ms. Morgan

3

cooperated with law enforcement and allowed them to search her home. (R. Doc. 52, 9:10–12). During the search, law enforcement located a firearm, ammunition, drug-related paraphernalia, methamphetamine, and male clothes within two backpacks. (R. Doc. 52, 10–11:10–16). A third backpack was found that contained only women's clothing, with no contraband. (R. Doc. 52, 11:17–19).

Ms. Morgan does not have any prior criminal history, and she has not been charged with any crimes of violence. (R. Doc. 51, page 3). While she was free on pretrial release, she began participating in mental health treatment at Eyerly Ball in Des Moines, Iowa. (R. Doc. 51, page 6). Part of her course of treatment included taking medication. *Id.* There is no evidence that Ms. Morgan herself ever abused her children, or that she was an unfit mother beyond the fact that she was in a relationship with Lacava. (R. Doc. 63, page 5).

While the nature of the charged offenses is serious, and the violations of Ms. Morgan's conditions of release prior to July 20, 2023 are inexcusable, Ms. Morgan had no control over Lacava's actions. While Ms. Morgan could have theoretically notified her probation officer or law enforcement about Lacava's presence in her home, doing so came with great risk. Lacava often had possession of Ms. Morgan's phone. (R. Doc. 65, 23–24:18–3). Ms. Smith testified that when she would attempt to call Ms. Morgan, "He would answer." (R. Doc. 65, 23–24:22–3). And even if Ms. Morgan did manage to notify the appropriate authorities of Lacava's presence, doing so would place her—and her children—in further danger. Ms. Smith further testified

4

that when Ms. Morgan simply spoke to other men in her life, like her coworkers, Lacava reacted by forcibly cutting her hair. (R. Doc. 65, 26:4–12).

In ruling on the government's motion to revoke pretrial release, the Court found that there was no combination of conditions of release, based on the factors set forth in 21 U.S.C. § 3142 (g), that will assure Ms. Morgan's appearance for sentencing and/or the safety of others. (R. Doc. 53). The Court also found that Ms. Morgan was unlikely to abide by conditions of release. (R. Doc. 53). Defendant maintains that these findings were clearly erroneous. (R. Doc. 59).

## STANDARD OF REVIEW

Appeal of a detention order to the Eighth Circuit is based on 18 U.S.C. § 3145(c). The statute provides:

> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c).

The Eighth Circuit has stated:

> We believe that in review under section 3145 the clearly erroneous standard should be applied to factual findings made by the district court. Many of the issues in such cases will involve issues of credibility best determined by the trier of fact. However, conclusions and reasoning relating to the ultimate questions flowing from such factual

5

> considerations-issues such as the reasonable likelihood of success on appeal and the determination of the conditions that will reasonably assure the appearance of the defendant-should be the subject of independent review. *See United States v. Hazime,* 762 F.2d 34, 37 (6th Cir. 1985) (in appellate review of pretrial detention, factual findings not disturbed unless clearly erroneous, but de novo consideration given ultimate conclusions and mixed questions of law and fact). As further illustration of the distinction, we observe that the factors of section 3142(g)(3) and (4) relating to the individual characteristics of the defendant and the nature and seriousness of the danger to any person or the community that would be posed by the person's release involve primarily factual issues. On the other hand, the factors of section 3142(g)(1) and (2) involving the nature and circumstances of the offense and the weight of the evidence against the person, as well as the analysis of the conditions of release of section 3142(c)(2)(A)-(N), particularly involve legal or judgmental assessments which are based on factual findings. We need not draw the issue more finely here as our study of a district court's order in any particular case should adequately reveal what are findings of fact that must be reviewed under the clearly erroneous rule and what are conclusions of law or articulations of reasoning that must be independently reviewed.

*United States v. Maull*, 773 F.2d 1479, 1487–88 (8th Cir. 1985) (internal footnote omitted). Under the clearly erroneous standard, the Eighth Circuit can overturn factual findings that it concludes are clearly wrong even though they are not unreasonable. *Menendez-Donis v. Ashcroft*, 360 F.3d 915, 918 (8th Cir. 2004).

Detention pending sentencing is the default: § 3143(a)(1) provides that a person who is awaiting sentence shall be detained *unless* "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person in the community." When determining if release conditions exist that will reasonably assure the appearance of a defendant at trial and the safety of the community, the courts are to consider the following: (1) the nature and

circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (citing 18 U.S.C. § 3142(g)).

A court may not detain a defendant simply because there are no conditions of release that will "guarantee" the defendant's appearance at trial and the safety of the community. *United States v. Stenger*, 536 F. Supp. 2d 1022, 1025 (S. D. Iowa 2008). Rather, a court must release a defendant if conditions of release can be imposed on the defendant that will "reasonably assure" those considerations. *Id*. This ensures that courts only order pre-trial detention for "a small but identifiable group of particularly dangerous defendants as to whom neither the impos[i]tion of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." *Id.* (*citing United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985)).

## ARGUMENT

The government argued essentially three separate points for why Ms. Morgan should be detained pending sentencing: that Ms. Morgan's association with Lacava created a danger to others, that her failure to contact authorities about Lacava cast doubt over whether Ms. Morgan can comply with future conditions of release, and that Ms. Morgan's multiple violations show she is a danger to the community.

7

There is no question that Lacava is a danger to the community. Yet, the government argued in its resistance to Ms. Morgan's appeal to the District Court that Ms. Morgan "can both be a victim and a danger to others." (R. Doc. 63, page 5). In support of that argument, the government focused entirely on Ms. Morgan's association *with Lacava*. Ms. Morgan herself is not a danger to her children—Lacava was. In support of their argument, the government further contends that Ms. Morgan "allowed" a firearm and methamphetamine to be kept within "easy access of her children." (R. Doc. 63, page 5). But the evidence does not suggest that these items belonged to Ms. Morgan. On the contrary, ATF agent Joe Christensen testified that there were multiple backpacks and bags found at Ms. Morgan's residence. (R. Doc. 65, 11:2–19). One of the backpacks contained only women's clothing but no contraband. (R. Doc. 65, 21–22:21–2). When questioned about the contents of this backpack, Agent Christensen testified "I don't believe there was any contraband found in that backpack." (R. Doc. 65, 16–17:21–2). All that was found along the women's clothing was a notebook. (R. Doc. 54, page 4). The backpack and gym bag containing male clothes, however, is where the firearm, ammunition and drug-related items were found. (R. Doc. 65, 17:10–12). This evidence, considered alongside the fact that Lacava exerted control over Ms. Morgan, rebuts the idea that Ms. Morgan willingly allowed these items to be near her children. Further, no one testified that Ms. Morgan had knowledge of these item's location or presence in her home. While these items should not have been anywhere near Ms. Morgan's

8

children, it is important to remember that Ms. Morgan could not resist Lacava's wishes without endangering herself or others. She does not present a danger to her children now that Lacava is incarcerated. (R. Doc. 65, 27:4–9).

Next, the government argued that Ms. Morgan's failure to report Lacava's presence casts doubt on her ability to abide by future conditions of release. (R. Doc. 63, pages 5–6). In its resistance, however, the government acknowledges that "domestic violence issues present complex dynamics and issues that often leave victims without options for escape." (R. Doc. 63, page 5). This is exactly what Ms. Morgan's predicament was. She could have reported Lacava, but doing so would have had consequences. Lacava had access to Ms. Morgan's phone, so he could easily see that Ms. Morgan made a call, sent a text, or arranged a meeting with the authorities. (R. Doc. 65, 24–25:22–2). And Lacava had beaten, choked, and berated Ms. Morgan for more insignificant actions that nonetheless upset him. (R. Doc. 65, 24:19–23, 25–26:24–12). But now that Lacava is incarcerated, it will be much easier for Ms. Morgan to comply with future conditions of release. Weighing the factors set forth in 18 U.S.C. § 3142(g) show that Ms. Morgan can comply with conditions of release. (R. Doc. 51, 59).

Lastly, the government argued that Ms. Morgan's three prior violations of conditions of release show she is a danger to her three children. (R. Doc. 63, page 6). Ms. Morgan did violate her conditions of release three times prior to July 20, 2023 when she made contact with Lacava. (R. Doc. 34). These violations are not

9

excusable, but they do not establish that Ms. Morgan is a danger to her children. Ms. Morgan consumed one margarita, consumed one CBD product, and received a speeding citation. (R. Doc. 34). Ms. Morgan willingly reported the alcohol and CBD usage to her probation officer. (R. Doc. 51, pages 1–2). While the conditions Ms. Morgan violated were simple, stating that they present a danger to Ms. Morgan's children is an overstatement. As a survivor of domestic violence, Ms. Morgan's family, her children and her sister, are a crucial part of her support system. (R. Doc. 59, page 6). Ms. Morgan's presence is not dangerous, it is what Ms. Morgan needs to rehabilitate and heal.

## CONCLUSION

Defendant has met her burden and shown that she is not a flight risk or a danger to the community. The government has not shown that there is no set of conditions that would reasonably assure Ms. Morgan's presence at hearings and the safety of the community. For these reasons, Ms. Morgan respectfully requests that the Court grant the appeal and order her released pending sentencing.

**PARRISH KRUIDENIER GENTRY**
**BROWN BERGMANN & MESSAMER, L.L.P.**

By: \_\_/s/ Jessica Donels_____
     Jessica Donels       AT0013389
     2910 Grand Avenue
     Des Moines, Iowa 50312
     Telephone: (515) 284-5737
     Facsimile: (515) 284-1704
     Email: jdonels@parrishlaw.com

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on September 5, 2023, that upon receipt of the notice from CM/ECF system that the brief has been filed, the foregoing Defendant-Appellant's brief will be served upon counsel by depositing one copies thereof in the U.S. Mail, postage prepaid, in an envelope addressed to the following counsel:

Kristin Herrera

United States Attorney's Office
110 East Court Ave, Suite 286
Des Moines, Iowa 50309
515-473-9300
Kristin.herrera@usdoj.gov
**ATTORNEY FOR PLAINTIFF-APPELLEE**

*/s/ Jessica Donels*
Attorney for Defendant-Appellant

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE 32(a)

### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This statement of the case complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,620 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

11

brief has been prepared in a proportionally spaced typeface using Microsoft Word in font size 14, Times New Roman.

/s/ *Jessica Donels*
ATTORNEY FOR PETITIONER - APPELLANT

Dated: September 5, 2023

12

Appellate Case: 23-2973     Page: 12     Date Filed: 09/05/2023 Entry ID: 5313192